## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>    HARBORHOUSE OF GLOUCESTER, LLC,<br><br>                Debtor | Chapter 7<br>Case No. 10-23078-HJB |
| JOHN O. DESMOND, CHAPTER 7 TRUSTEE OF HARBORHOUSE OF GLOUCESTER, LLC,[1]<br><br>                Plaintiff,<br><br>v.<br><br>RAYMOND C. GREEN, INC., AS TRUSTEE OF RAYMOND C. GREEN TRUST and CONNECT PLUS INTERNATIONAL CORPORATION,<br><br>                Defendants. | Adversary Proceeding<br>No. 11-1351 |

### AMENDED MEMORANDUM OF DECISION

Before the Court are cross-motions for summary judgment filed by the plaintiff in this adversary proceeding (the Chapter 7 trustee in the underlying bankruptcy case) (the "Trustee") and the defendant Raymond C. Green, as the trustee of Raymond C. Green

---

[1] John O. Desmond was appointed successor trustee after the passing of the originally-appointed trustee, Joseph Braunstein. In a statement filed with the Court, Desmond has indicated that he wishes to adopt the previous trustee's positions in this adversary proceeding. Desmond also stated that he would be filing a motion to be substituted as plaintiff. Although that motion was not filed, the Court *sua sponte* substitutes Desmond as plaintiff, in light of the fact that he is now the bankruptcy estate's representative.

1

Trust ("Green"). The Trustee has asked this Court to disallow the secured claim asserted by Green against property of the bankruptcy estate on the grounds that Green is not entitled to enforce either the note on which his claim is based or the mortgage which secures payment of the note. By his cross-motion, Green seeks a ruling to the contrary. Because the original promissory note has been lost, the Court must determine whether, under Massachusetts law, the holder of a lost note affidavit may stand in the shoes of the original holder of the note or, alternatively, assert the rights under the mortgage that secures its payment.

I.   FACTS AND TRAVEL OF THE CASE

Harborhouse of Gloucester, LLC, the debtor in the underlying bankruptcy case (the "Debtor"), was formed in 2003. In August 2004, the Debtor acquired real property (the "Property") from Timothy A. Murphy, consisting of a restaurant and two residential apartments located at 90 Rantoul Street, Beverly, Massachusetts. In exchange for title to the Property, the Debtor paid $1.00 and assumed the encumbrances of record.

At the time of the conveyance, the Property was encumbered by a duly recorded mortgage and security agreement (the "Mortgage") executed by Murphy in December 1999 in favor of Philip J. Hansbury, as trustee of the 90 Rantoul Real Estate Trust ("Hansbury"). The Mortgage was intended to secure Murphy's obligations under a contemporaneous promissory note (the "Note") in the original principal amount of $360,000.00.

On May 15, 2006, Hansbury purported to assign the note to Connect Plus International Corporation ("CPIC").[2] However, at some time prior thereto, the original

---

[2] Robert Lockwood II ("Lockwood") is the President, Treasurer and sole Director of CPIC.

Note had been lost. In connection with the conveyance from Hansbury to CPIC, Hansbury executed an affidavit (the "Lost Note Affidavit") stating that: (1) a full and complete copy of the Note was attached to the affidavit; (2) Hansbury was the holder of the Note and had not transferred the Note or otherwise forgiven or discharged the Note or the obligation, but the Note had been lost or misplaced; (3) the current outstanding balance of the Note was in the amount of $360,000.00, exclusive of interest, penalties, and other charges; and (4) Hansbury was transferring the Note and all rights thereunder to CPIC for total consideration of $460,000.00. Attached to the Lost Note Affidavit were: (1) a copy of the Note; (2) an allonge to the Note purporting to transfer rights under the Note to CPIC; and (3) an assignment of the Mortgage to CPIC.

On March 9, 2007, CPIC purported to assign the Note and Mortgage to Green as security for a $150,000.00 loan by Green to CPIC. On that date, Lockwood, on behalf of CPIC, executed an assignment of the Mortgage and an allonge to the Note transferring CPIC's rights under both to Green. According to the allonge, the outstanding balance on the Note at the time of transfer to Green was $602,557.73.[3]

On December 1, 2010, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code" or "Code")[4], and the case was converted to one under Chapter 7 on November 30, 2011. Green filed a proof of claim

---

Lockwood was also the manager of the Debtor.

[3] The allonge clearly could not have been attached to the Note (which had been lost), and it is unclear whether it was affixed to the Lost Note Affidavit. For the reasons that follow, however, the implications, on these facts, of the Court's holding in In re Shapoval, 441 B.R. 392 (Bankr. D. Mass. 2010) (under Mass. Gen. Laws ch. 106, §3-204(a), an indorsement of an allonge is invalid unless "affixed" to the mortgage note), are not material to the outcome of present dispute.

[4] See 11 U.S.C. §§ 101 et seq.

3

in the Chapter 11 case, asserting a claim against the Debtor in the amount of $795,926.56 under the Note, secured by the Mortgage on the Property. The Massachusetts Department of Revenue (the "MDOR") also filed a proof of claim, asserting a claim of $248,151.67 secured by a lien on the Property.

On May 30, 2012, the Trustee filed a motion requesting approval of the sale of the Property free and clear of all liens, claims, interests, and encumbrances (the "Sale Motion") and served a copy of both the Sale Motion and notice of hearing on Green and Green's counsel. The Sale Motion was granted, without objection, on June 21, 2012, and the Property sold free and clear of liens for $245,000.00. The proceeds of the sale, however, remained subject to the disputed secured claims of both Green and the MDOR.

On December 16, 2011, well prior to the sale, this adversary proceeding was initiated by the Trustee, objecting to the validity, extent, and priority of Green's secured claim.[5] In the six-count amended complaint (the "Complaint"), the Trustee maintains that neither CPIC nor Green had or currently has a right to enforce the Note.[6] The adversary proceeding progressed in fits and starts as the Trustee struggled to

---

[5] CPIC was also named as a defendant in the adversary proceeding, but has been defaulted. See Notice of Default, June 27, 2013, ECF No. 85.

[6] More specifically, Count I of the Complaint seeks a declaratory judgment against Green that the Note is unenforceable under Massachusetts General Laws ("MGL") ch. 106, § 3-309 and the Mortgage, as security for the Note, is likewise unenforceable. Count II seeks a declaratory judgment that neither CPIC nor Green may enforce any claims previously held and assigned to them by Hansbury, as Hansbury's claims against Murphy under the Note and Mortgage were discharged by virtue of accord and satisfaction. Count III of the Complaint specifically objects to Green's proof of claim pursuant to 11 U.S.C. § 502(b) for the reasons set forth in Counts I and II. Count IV requests a declaratory judgment as to CPIC that any payments made by CPIC to the Debtor on account of the Note were in fact capital contributions and should be subordinated to the claims of general unsecured creditors. Count V asks the Court to preserve the Mortgage for the benefit of the bankruptcy estate under § 551. And Count VI seeks a an order compelling Green to turn over, pursuant to § 542 of the Code, $12,000 in rental payments and other fees received postpetition on account of the Property.

4

determine whether and to what extent the avoidance of the Green lien would be of benefit to the administrative solvency of the estate in light of the MDOR lien. In any event, however, the current Trustee has been substituted as plaintiff and has adopted the positions of the former Chapter 7 trustee. <u>See</u>, <u>supra</u> n.1. The cross-motions for summary judgment have now been argued and are ready for disposition.

II.    POSITIONS OF THE PARTIES

The core argument raised by the Trustee for summary judgment on Counts I and III is that Green has no enforceable secured claim against the Property because he did not possess the Note at the time of its loss. The Trustee maintains that, under MGL ch. 106, § 3-309(a) ("§ 3-309(a)"), a claimant relying on a lost note affidavit must have had possession of the note at the time of the loss in order to enforce it. And, as a corollary, the Trustee concludes that Green's inability to enforce the Note also precludes his enforcement of the Mortgage, arguing that the Mortgage is not independently enforceable and secures no obligations other than those represented by the (unenforceable) Note.

Green insists that § 3-309(a) should not be interpreted in the manner asserted by the Trustee, and that he is entitled to enforce the Note under that section as the holder of the Lost Note Affidavit, stepping into the shoes of the original note holder. And even if he is unable to enforce the Note, Green says, he is at least the holder of an enforceable underlying claim. Moreover, he adds, even if he is unable to enforce the Note or the underlying claim under Massachusetts law, he still has the power to enforce the Mortgage, which mortgage entitles him to the proceeds from the sale of the

5

Property.  And finally, in the event the Court grants the Trustee summary judgment, Green requests that he be given leave to join or substitute Hansbury as a party to this action.[7]

III.   DISCUSSION

    A.   **Summary Judgment Standard**

In order to succeed on a motion for summary judgment, a party must establish "'that there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'"  <u>OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Can.</u>, 684 F. 3d 237, 241 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).[8]  Here, the parties agree on the facts material to the outcome of their competing motions for summary judgment, and the only remaining questions are issues of law.

    B.   **Enforcement of a Note by a Transferee of a Lost Note Affidavit**

There appears to be no dispute that the Note is (or perhaps better said, "was") a negotiable instrument.  The treatment of such instruments is governed in Massachusetts by MGL Chapter 106.  MGL ch. 106, § 3-102 ("[t]his Article shall apply to negotiable instruments").[9]

---

[7] The Trustee's motion specifically requests judgment under Counts I and III.  In addition to his opposing request for summary judgment on those counts, Green also summarily requests judgment as to Counts II and VI on grounds that the Trustee has failed to produce sufficient evidence to support those claims.

[8] Fed. R. Civ. P. 56(a) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

[9] Section 3-104 provides:

    (a) . . . "[N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

6

Section 3-301 provides that a person may enforce an instrument if that person is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3–309." MGL ch. 106, § 3–301. "Massachusetts law defines both a 'holder' and a 'nonholder,' in part, as an individual who currently possess a negotiable instrument; the difference being that a holder possesses a 'negotiated negotiable instrument,' whereas a nonholder possesses a 'non-negotiated negotiable instrument.'" Dudley v. S. Va. Univ., (In re Dudley), 502 B.R. 259, 275 (Bankr. W.D. Va. 2013).[10] The requirements for enforceability under § 3-301

---

> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.
>
> (b) "Instrument" means a negotiable instrument.

MGL. ch. 106, § 3-104.

[10] As the Dudley Court explained, under Massachusetts law,

> A "holder" is an individual or entity that is transferred possession of a negotiated instrument by a transferor who is not the issuer. See Mass. Gen. Laws ch. 106, § 3–201(a) (2012).
>
> A "nonholder in possession with rights of a holder" is an individual or entity that is transferred possession of a non-negotiated instrument and acquires the rights of the previous holder by subrogation or assignment and is a successor to the holder, or otherwise acquires the holder's rights. See comment to Mass. Gen. Laws ch. 106, § 3–301 (2012).

share the common requirement that the person seeking to enforce the negotiable instrument must have had actual possession of the instrument at one time, with the sole exception to the *current* possession requirement being a person entitled to enforce a lost or destroyed instrument under § 3-309.  Id. at 275-6; MGL ch. 106, § 3-301.

At the time of the hearing, Green stipulated that he was not currently in possession of the Note, and never had been, as it was lost by Hansbury even before the purported assignment from him to CPIC.  The Trustee argues that since Green was *never* in possession of the Note, he cannot be a "person entitled to enforce" under § 3-301 and § 3-309(a).  But Green says that, as the holder of the Lost Note Affidavit by assignment, he *is* a person entitled to enforce the Note.

Section 3–309(a) permits a person to enforce a lost, destroyed or stolen instrument through secondary evidence under the following conditions:

> (i) *the person was in possession of the instrument and entitled to enforce it when loss of possession occurred*, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

MGL ch. 106, § 3–309(a) (emphasis supplied).

---

A "negotiated negotiable instrument" is a negotiable instrument that has been transferred to another with the proper indorsement by the transferor or the transfer of an instrument payable to bearer. Mass. Gen. Laws ch. 106, § 3–201 (2012). A non-negotiated negotiable instrument, therefore, is a negotiable instrument that has been transferred to another without the proper indorsement and is not payable to bearer.

A "non-negotiated negotiable instrument" is a negotiable instrument that has been transferred to another without the proper indorsement and is not payable to bearer. Mass. Gen. Laws ch. 106, § 3–201 (2012).

Dudley 502 B.R. at 275 n. 17-20 (citing MGL ch. 106, §§ 3-201, 3-301).

In Dennis Joslin Co., LLC v. Robinson Broad. Corp., 977 F. Supp. 491 (D.D.C. 1997), the court concluded that, under the plain language of the § 3–309 version applicable in that case (identical to the current Massachusetts statute), only the person in possession of a negotiable instrument at the time of loss is entitled to enforce that instrument under § 3-309. According to the Joslin court, a person seeking to enforce a lost note must meet two tests: "it must have been both *in possession of the note when it was lost* and entitled to enforce the note when it was lost." Id. at 495 (emphasis supplied). Accordingly, in Joslin, the court held that, based on the plain language of the statute, the transferee of rights under a note that was lost while in the possession of the transferor could not recover under the note. Id.

Since the Joslin decision, the drafters of the Uniform Commercial Code (the "UCC") have amended § 3-309 to reject the Joslin holding.[11] But Massachusetts has *not* adopted that amended version of § 3-309. In Marks v. Braunstein, 439 B.R. 248, 251 (D. Mass. 2010), the District Court for the District of Massachusetts applied the Joslin court's holding to the Massachusetts version of § 3-309, holding that the party seeking to enforce a note in that case did not meet the "prerequisites of § 3–309 because he offered no proof that he was ever in possession of the Note." Id. The

---

[11] The amended version of § 3-309(a) of the UCC provides:

   (a)   A person not in possession of an instrument is entitled to enforce the instrument if:

       (1)   the person seeking to enforce the instrument:
       . . .
          (B)   has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred . . . .

U.C.C. § 3-309(a)(1)(B). Thus, "[u]nder the [amended] UCC version, acquisition of an ownership interest from someone entitled to enforce is sufficient." Dudley, 502 B.R. at 276 n. 21.

Marks court, citing to Joslin, reiterated that "[a] party seeking to enforce a note must show that, prior to the loss or destruction of the note, he 1) was entitled to enforce the instrument and 2) had possession of the instrument." Id.

More recently, the Bankruptcy Court for the Western District of Virginia also agreed that "section 3-309 permits enforcement of a lost or destroyed instrument only if the person seeking enforcement can establish that he was in possession of the instrument and entitled to enforce it at the time possession was lost or destroyed." Dudley, 502 B.R. at 276.  The court noted that "[u]nlike the [amended] UCC version, Massachusetts does not permit an individual who has never acquired possession to enforce a negotiable instrument." Id. at 276 n. 21.  Other courts have similarly found that enforcement of a note is not possible under identical versions of § 3-309 where the person seeking to enforce the instrument was not in possession of the instrument and entitled to enforce it when lost.  See Kemp v. Countrywide Home Loans, Inc. (In re Kemp), 440 B.R. 624, 626 (Bankr. D.N.J. 2010); Cadle Co. of Conn. v. Messick, 30 Conn. L. Rptr. 21, 45 UCC Rep. Serv.2d 563 (Conn. Super. Ct. 2001).

Still, other courts (also interpreting identical versions of § 3-309) have rejected the Joslin reasoning, holding that possession of the instrument at the time of the loss is not required.  See Caddo Parish-Villas S., Ltd. v. Beal Bank, S.S.B. (In re Caddo Parish–Villas S., Ltd.), 250 F.3d 300, 302 (5th Cir.2001); YYY Corp. v. Gazda, 761 A.2d 395, 400–01 (N.H. 2000); see also Bobby D. Assocs. v. DiMarcantonio, 751 A.2d 673, 675 (Pa. Super. Ct. 2000); Beal Bank, S.S.B. v. Caddo Parish-Villas S., 218 B.R. 851, 855 (N.D.Tex.1998).  In reaching this conclusion, however, those courts have based their holdings on the view that Article 3 is silent on the issue, and thus common-law

10

principals of assignment should apply.  See, e.g., Caddo, 250 F.3d at 302; Gazda, 761 A.2d at 401.

This Court rules, however, that Article 3 *does* address the enforceability of a lost note – the conditions for enforceability are plainly set forth in MGL ch. 106, § 3-309. And the "Massachusetts Supreme Judicial Court has stated . . . that where Article 3 specifically governs a situation, it trumps any common law default rule." Marks, 439 B.R. at 251-52 (citing Union Trust Co. v. McGinty, 98 N.E. 679, 680, 212 Mass. 205 (1912)).  This holding comports with those courts that have examined the Massachusetts version of § 3-309, and accords with the purpose of possession – to provide "adequate protection that the Debtor will not sustain a loss from another party claiming to own the Note." In re Gavin, 319 B.R. 27, 33 (B.A.P. 1st Cir. 2004).[12]

Actual possession at the time of loss as a requirement for enforcement of a negotiable instrument under § 3-309 provides an objective method to determine a party's right to enforce a negotiable instrument and provides a reliable means to determine the parties' rights.  By setting an actual possession requirement, parties on both sides have a clear and established standard. The maker of the note is protected from multiple claims of its ownership and enforcement of the note is still possible by the party who lost it.  It may be that Green has express or implied warranty rights against CPIC.  But because the undisputed facts show that the Note was lost prior to the purported transfer of the Note to Green, this Court rules that he cannot enforce the

---

[12] This Court certainly respects the contrary view and the reasons for that view explicated by those courts.  But the Massachusetts legislature has not taken steps to amend its version of § 3-309.  This Court is not empowered to amend that section on its own and is much disinclined to undermine its plain language by searching for a methodology that would render § 3-309 meaningless.

11

Note.[13] And because the obligation under the Note is unenforceable, Green has no claim against this Chapter 7 estate under § 502(b)(1) of the Bankruptcy Code. See 11 U.S.C. § 502(b)(1) (claims which are "unenforceable against the debtor and property of the debtor" under nonbankruptcy law are not allowable against the bankruptcy estate).

### C.  Enforcement of the Mortgage

The Debtor acquired the Property in question by a quitclaim deed, subject to the Mortgage. In Massachusetts, a mortgage is a "conveyance made for the purpose of securing performance of a debt or obligation." MGL ch. 260, § 35. Green, being unable to enforce the Note, makes an alternative claim against the Property based solely on the assignment to him of the Mortgage. "Absent a provision in the mortgage instrument restricting transfer . . . a mortgagee may assign its mortgage to another party." Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013). The Mortgage contains no restriction on transfer, has not been challenged (other than as here set forth), and was duly recorded. The Trustee, by virtue of that recording, had constructive notice of the existence of the Mortgage.

Still, the Trustee contends that, since Green lacks the ability to enforce the Note, he also lacks the ability to enforce his claim under the Mortgage. The Trustee maintains that "[u]nless a mortgage secures an obligation, it is a nullity." In re D & S Contractors, Inc., 422 B.R. 1, 4 (Bankr. D. Mass. 2010) (quoting the Restatement (Third) Prop.: Mortgages § 1.1, cmt. (1997)). But the Mortgage *does* secure an obligation; and that obligation is in the form of the lost Note, *albeit not held by Green*.

"In Massachusetts, the note and the mortgage need not be held by the same

---

[13] Because the Court holds that Green is not entitled to enforce the Note, the Court need not address the parties' dispute regarding the adequacy of the allonge in light of In re Shapoval, 441 B.R. 392, 393 (Bankr. D. Mass. 2010).

12

entity. The two instruments exist on separate planes, and the transfer of the note does not automatically transfer the mortgage." Culhane 708 F.3d at 292 (citing Eaton v. Fed. Nat. Mortgage Ass'n, 969 N.E.2d 1118, 1124–25, 462 Mass. 569 (2012); Lamson & Co. v. Abrams, 25 N.E.2d 374, 378, 305 Mass. 238 (1940)). In Eaton, the Massachusetts Supreme Judicial Court (the "SJC") took a close look at the common law of real estate mortgages in Massachusetts. Finding that "[t]he true character of a mortgage is the pledge of real estate to secure the payment of money, or the performance of some other obligation," id. at 1124 (quoting Young v. Miller, 72 Mass. 152, 6 Gray 152, 153 (1856)), the SJC concluded that "[the mortgage] has no determinate value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond." Id. at 1125 (quoting In re Marron, 455 B.R. 1, 6–7 (Bankr. D. Mass. 2011)).

"A real estate mortgage in Massachusetts has two distinct but related aspects: it is a transfer of legal title to the mortgage property, and it serves as security for an underlying note or other obligation." Eaton, 969 N.E.2d at 1124. "[T]he holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage." U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 54, 458 Mass. 637 (2011). The noteholder's equitable right of assignment allows a noteholder who does not hold the mortgage to assert his title in an action at law. Id. But the privilege does not flow both ways. "[T]he mortgage (no matter who holds it) is always subject to the note. As a hoary maxim teaches, 'the debt is the principal and the mortgage an incident.' In other words, the note is the beneficial interest and the mortgage is the legal interest." Culhane, 708 F.3d at 292 (quoting

Morris v. Bacon, 123 Mass. 58, 59 (1877)).

While it is true that in Eaton, the SJC limited its holding "to apply only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of [its] opinion," 969 N.E.2d at 1133, its view "[did] not alter existing state law prior to the commencement of foreclosure." In re Martin, 499 B.R. 155, 157 (Bankr. D. Mass. 2013). Given that "at common law, a mortgagee possessing only the mortgage was without authority to foreclose on his own behalf" and that "[a]s a purchaser [of a mortgage without the underlying note], [defendant] must have known that the possession of the debt was essential to an effective mortgage, and that without it he could not maintain an action to foreclose the mortgage," Eaton 969 N.E. 2d at 1126, Green's inability to enforce the Note also renders him unable to enforce the Mortgage.

The irony here is that Green took *no* steps to "enforce" the Mortgage. Green has not foreclosed. It was the Trustee who sold the Property, with the encumbrances to attach to the proceeds. The Mortgage remains, now in altered form, as a security interest in the sale proceeds. But Green is not the holder of the underlying Note. And although Green may be entitled to receive some or all of the proceeds as the assignee of the Mortgage,[14] he must hold any proceeds in trust for the true holder of the Note – who is quite possibly no one other than Hansbury.[15]

---

[14] The Court takes judicial notice of the outstanding request of the predecessor Trustee (presumably adopted by the current Trustee), under § 506(c) of the Bankruptcy Code, for reimbursement from those proceeds for services rendered.

[15] Green has requested, in the event the Court interprets § 3-309(a) in the manner advanced by the Trustee, that the Court grant him leave to join or substitute Hansbury as a proper and indispensable party to this action. That request is more properly made by way of a separate motion. And, if such a motion is filed, it should, *inter alia*, explain the basis for the Court's subject matter jurisdiction over any dispute between Green and Hansbury.

14

II.     CONCLUSION

This Court rules that Green is not the holder of the Note and therefore cannot enforce it. Accordingly, Green has no claim against the bankruptcy estate, *per se*. Additionally, just as Green is not a holder of the Note, CPIC was never a holder of the Note. However, Green did possess a valid legal interest in the Mortgage and, therefore, is entitled to any proceeds of the sale to which that secured claim now attaches.[16] Nevertheless, Green must hold any proceeds received from the Trustee on account of that secured claim for the benefit of the true holder of the Note. Accordingly, both requests for summary judgment will be granted in part and denied in part.[17] Orders and a Judgment in conformity with this Memorandum shall issue forthwith.

DATED:  February 7, 2014

_____
Henry J. Boroff
United States Bankruptcy Judge

---

[16] Because § 551 preserves a lien for the benefit of the bankruptcy estate only in the event the lien is avoided or declared void, see 11 U.S.C. § 551, the Court is compelled to *sua sponte* dismiss Count V of the Complaint. Furthermore, as the request for turnover under § 542 in Count VI of the Complaint is dependent upon preservation of the lien under § 551, summary judgment in favor of Green will be granted. See Ostrander v. Source One Fin. Corp. (In re Mollison), 463 B.R. 169, 189 & n.22 (Bankr. D. Mass. 2012).

[17] Green's one-sentence request for summary judgment as to Count II based on his asserted "uncontested evidence . . . contrary" to the Trustee's allegations in the Complaint, Def. Cross-M. for Partial S.J., 17, Aug. 2, 2013, ECF No. 95, will be denied as wholly insufficient. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the . . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact"); Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . .").